UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

BKY No:    12-42173
Chapter 7

Progress Casting Group, Inc.

Debtor.

_____

**NOTICE OF HEARING AND MOTION FOR RELIEF FROM STAY OF WILLIAM F. BIEBER**

TO:   The debtor and its attorney, David Hoiland; Timothy D. Moratzka, the chapter 7 trustee; the United States Trustee; and PPE Equipment Leasing, LLC.

1. William F. Bieber moves the court for the relief requested below and gives notice of hearing.

2. The court will hold a hearing on this motion at 2:30 p.m. on May 7, 2013, before the sitting Judge, in Courtroom No. 7W, at the United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

3. Any response to this motion must be filed and served not later than May 2, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. The court has jurisdiction over this motion pursuant to 28. U.S.C. § 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1. This is a core proceeding. The chapter 7 case was filed on April 13, 2012, and is now pending.

1

5. This motion arises under 11 U.S.C. § 362 and Federal Rules of Bankruptcy Procedure 4001(a)(1). This motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013. Bieber requests relief to enforce his security interest in certain rights of the Debtor to payment.

**A.     The Promissory Notes and Security Agreement.**

6. The Debtor executed two promissory notes, both dated May 3, 2007, in favor of Bieber: a Term Promissory Note in the principal amount of $5,000,000 (the "Original Term Note"); and a Revolving Demand Promissory Note in the principal amount of $3,000,000 (the "Revolving Note"). A copy of the Original Term Note, marked Exhibit A, is attached hereto and incorporated herein.

7. To secure the Debtor's obligations under the Original Term Note and the Revolving Note, the Debtor executed a Security Agreement, dated May 3, 2007, granting Bieber a blanket security interest in all of the Debtor's tangible and intangible assets, including rights to payment of every kind. A copy of the Security Agreement, marked Exhibit B, is attached hereto and incorporated herein.

8. Bieber perfected the security interest granted to him under the Security Agreement by filing a UCC-1 Financing Statement, on June 6, 2007, with the Office of the Minnesota Secretary of State. A copy of the UCC-1 Financing Statement, marked Exhibit C is attached hereto and incorporated herein.

9. On February 21, 2008, in connection with a secured loan to the Debtor by JPMorgan and to give JPMorgan a first secured position, Bieber terminated the UCC-1 Financing Statement and re-filed an identical UCC-1 Financing Statement evidencing his security interest under the Security Agreement in all of the Debtor's tangible and

intangible assets. On March 25, 2009, Bieber filed an amendment to the February 21 Financing Statement to restate the collateral description. A copy of the February 21, 2008 termination statement, marked Exhibit D, is attached hereto and incorporated herein. A copy of the February 21, 2008 UCC-1 Financing Statement and subsequent Amendment, collectively marked Exhibit E, is attached hereto and incorporated herein.

10. Debtor executed a Term Promissory Note, dated April 16, 2008 (the "Amended Term Note"), in the principal amount of $8,250,000, amending and restating the Original Term Note. The Amended Term Note incorporates the outstanding balance under the Revolving Note, in effect, cancelling the Revolving Note. A copy of the Amended Term Note, marked Exhibit F, is attached hereto and incorporated herein.

11. By Amended Security Agreement, dated March 25, 2008, the Security Agreement was amended to expand the secured obligations to include all current and future indebtedness of the Debtor to Bieber and to include, in the description of the collateral, specific reference to "proceeds, including all policies, claims to payment under, and proceeds of any and all insurance policies payable to the Debtor. . . [.]" A copy of the Amended Security Agreement, marked Exhibit G, is attached hereto and incorporated herein.

12. By Second Amended and Restated Term Promissory Note, dated August 1, 2008, the Amended Term Note was further amended to increase the rate of interest. A copy of the Second Amended and Restated Term Promissory Note, marked Exhibit H, is attached hereto and incorporated herein.

13. By Third Amended and Restated Term Promissory Note, dated December 10, 2008, the Second Amended and Restated Term Promissory Note was further amended

3

to extend the maturity date to January 1, 2010. A copy of the Third Amended and Restated Term Promissory Note, marked Exhibit I, is attached hereto and incorporated herein.

**B.    The Debtor's Sale of its Assets and Right to Payment of the Buyer Holdback.**

14.    Pursuant to the terms of an Asset Purchase Agreement, dated October 29, 2009, the Debtor sold substantially all of its assets to Wellman Dynamics, Inc. ("Wellman Dynamics"). At Section 1.02(e), the Asset Purchase Agreement specifically excludes from the purchased assets "Seller's rights to any and all insurance refunds." A copy of the Asset Purchase Agreement, marked Exhibit J, is attached hereto and incorporated herein.

15.    In connection with the sale, Bieber released his security interest in the purchased assets. A copy of the UCC Financing Statement, marked Exhibit K, deleting the purchased assets from the description of the collateral is attached hereto and incorporated herein.

16.    On November 9, 2009, the Asset Purchase Agreement was amended to designate Wellman Dynamics Twin Cities, Inc. ("Wellman Dynamics TC"), by Amendment to Asset Purchase Agreement, as the buyer and to permit Wellman Dynamics TC to hold back $300,000 of the purchase price (the "Buyer Holdback"), payment of which was contingent upon the volume of future sales revenues of Wellman Dynamics TC. A copy of the Amendment, marked Exhibit L, is attached hereto and incorporated herein.

17. Since the closing on the Asset Purchase Agreement, the sales revenues of Wellman Dynamics TC have been such that at least $238,000 of the $300,000 Buyer Holdback is due and payable.

18. The $238,000 and any additional portion of the Buyer Holdback that becomes due and payable in the future is Bieber's collateral under the Amended Security Agreement.

C. **The Debtor's Right to Payment of Self-Insurance Refunds.**

19. Beginning in August 1, 2002 and continuing to August 1, 2009, Debtor, and other related entities, made payments to an affiliated company, ATEK Companies, Inc. ("ATEK Companies") to fund a worker's compensation program of self-insurance. ATEK Companies passed the payments through to a third-party administrator to evaluate and pay worker's compensation claims against the Debtor and the other related companies. ATEK Companies also maintained stop loss coverage for itself and each of the related entities. At the end of each one-year, policy period, the third party administrator reviewed all pending and paid claims to determine whether a deficit or surplus existed in the self-insurance fund. If there were surplus funds, the third-party administrator refunded the funds to ATEK Companies and ATEK Companies passed the funds through to the appropriate entities, including Debtor, based on the loss experience of each respective entity. Conversely, if there were insufficient funds reserved for claims for a particular entity, ATEK Companies would collect the shortfall from the respective entity and in turn pay the funds to the third party administrator to cover the shortfall.

20. The world economic crisis that began in late 2008 had a devastating impact on the Debtor's financial condition. Starting in 2009, the Debtor's distressed

5

financial condition left it unable to pay all of its obligations to the self-insurance program and ATEK Companies advanced the Debtor's share. By April 2012, aggregate advances to the worker's compensation self-insurance fund by ATEK Companies on behalf of the Debtor totaled $321,047. In April 2012, ATEK Companies received a check, dated March 28, 2012, from the third-party administrator of the self-insurance program for $209,122, of which $102,970 was allocable to funds that ATEK Companies had advanced on behalf of the Debtor. Consequently, April 5, 2012. ATEK Companies simply offset the $102,970 against the Debtor's indebtedness. A copy of the check, marked Exhibit M, is attached hereto and incorporated herein.

21. By check dated April 8, 2013, ATEK Companies received a refund from the third-party administrator of the self-insurance program for $294,277 of which $183,032 was attributable to funds that ATEK Companies had advanced on behalf of the Debtor for insurance coverage under the self-insurance program. At the time, the Debtor's remaining indebtedness to ATEK Companies for funds it had advanced for the Debtor for the worker's compensation self-insurance fund totaled $225,483. A copy of the check, marked Exhibit N, is attached hereto and incorporated herein.

22. The insurance payment refunds of $102,970 and $183,032 constitute Bieber's collateral under the Amended Security Agreement.

23. ATEK Companies expects to receive further refunds of funds it has advanced on behalf of the Debtor to pay worker's compensation claims against it under the self-insurance program. The amount is difficult to estimate but may be in the range of $100,000.

24. Any such future refunds are also Bieber's collateral under the Amended Security Agreement.

**D.  The Term Note is in Default.**

25. The Third Amended and Restated Term Promissory Note is in default by virtue of the failure of Debtor to pay the outstanding principal balance and all accrued interest on the maturity date.

**E.  Right to Relief from Stay.**

26. Section 362(d) of the Bankruptcy Code provides that the court shall grant relief from the stay with respect to a stay of an act against property if the debtor has no equity in the property and the property is not necessary to an effective reorganization.

27. By definition, since this is a Chapter 7 case, the existing and future insurance refunds, the Buyer Holdback amount currently due and owing, and any further portion of the Buyer Holdback that becomes due and owing (collectively, the "Debtor's Rights to Payment") are not necessary to an effective reorganization.

28. The Debtor has no equity in the Debtor's Rights to Payment.

WHEREFORE, Bieber requests the entry of an order terminating the automatic stay provided by Section 362(A) of the Bankruptcy Code to permit him to enforce his security interest in the Debtor's Rights to Payment, including by taking all steps necessary to collect payment of (a) the refund of $102,970, (b) the refund of $294,277, (c) any future insurance refunds that become due and owing to the Debtor, (d) the Buyer Holdback currently due and owing, and (e) any further Buyer Holdback funds that become due and owing; and for such other and further relief as the court deems just and equitable.

MIDS01 685325v1

**BARNES & THORNBURG LLP**

Dated:  April 22. 2013    By:    *s/David A. Orenstein*
David A. Orenstein (#121447)
225 South Sixth Street, Suite 2800
Minneapolis, Minnesota 55402
(612) 333-2111

Attorneys for William F. Bieber

MIDS01 685325v1

## VERIFICATION

    I, William F. Bieber, declare under penalty of perjury that the facts in the foregoing motion are true and correct according to the best of my knowledge, information and belief.


Dated:  April 18, 2013                      */s/ William F. Bieber*

MIDS01 685325v1

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

BKY No:       12-42173
Chapter 7

Progress Casting Group, Inc.

Debtor.

_____

## MEMORANDUM OF LAW

William F. Bieber ("Movant") submits this Memorandum of Law in Support of his Motion for Relief from Stay in the above case.

## FACTS

The facts are set forth in the Verified Motion.  Movant seeks relief from stay to enforce his security interest in certain rights that the Debtor has to payment of insurance refunds and proceeds of the sale of its assets.  The rights to payment are included in the collateral for a promissory note, as amended, executed by the Debtor in favor of Movant, in the principal amount of $8,250,000.  The insurance refunds to which the Debtor has a current right to payment total $286,002, with the possibility of additional refunds in the range of $100,000.  The sale proceeds currently payable to Debtor are $238,000, with the possibility of an additional $62,000.  The amount due and owing under the promissory note exceeds $8,250,000.

## LEGAL AUTHORITY

Pursuant to §362(d)(2) of the Bankruptcy Code, relief from stay is appropriate with respect an act against property stayed under §362(a) where the debtor has no equity

1

in the property and the property is not necessary to an effective reorganization. In this case, the Debtor has no equity in the rights to payment that are at issue, and, this being a Chapter 7 case, these rights to payment are not necessary to an effective reorganization.

**BARNES & THORNBURG LLP**

Dated:  April 22, 2013

*s/David A. Orenstein*
David A. Orenstein (#121447)
225 South Sixth Street
Suite 2800
Minneapolis, MN 55402
T:  612-333-2111
F:  612-333-6798
David.Orenstein@BTLaw.com

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

BKY No:    12-42173
In re:    Chapter 7

**Progress Casting Group, Inc.**

   **Debtor.**
_____

## **CERTIFICATE OF SERVICE**

David A. Orenstein, under penalty of perjury, states that on April 22, 2013, he caused to be served the following:

1. NOTICE OF HEARING AND MOTION FOR RELIEF FROM STAY OF WILLIAM F. BIEBER;
2. MEMORANDUM OF LAW;
3. Proposed ORDER; and
4. CERTIFICATE OF SERVICE.

The entities listed below were served the above listed documents electronically via the Court's NEF procedures.

| | | |
|---|---|---|
| **David Jon Hoiland**<br>Hoiland Law Office<br>120 South Sixth Street<br>Suite 1100<br>Minneapolis, MN 55402 | representing | **Progress Casting Group, Inc.**<br>12925 16th Avenue North<br>Plymouth, MN 55441<br>*(Debtor)* |
| **Timothy D. Moratzka**<br>Mackall Crounse & Moore<br>1400 AT&T Tower<br>901 Marquette Ave<br>Minneapolis, MN 55402 | representing | **Timothy D Moratzka**<br>901 Marquette Ave , Ste 1400<br>Minneapolis, MN 55402<br>*(Trustee)* |

I also caused to be served the above-described documents by U.S. Mail upon the parties indicated below:

PPE Equipment Leasing, LLC          Progress Casting Group, Inc.
12925 16th Avenue N                 12925 16th Avenue North
Plymouth, MN  55441                 Plymouth, MN

I declare under penalty of perjury, under the laws of the State of Minnesota and the United States of America that the foregoing is true and correct.

Dated:  April 22, 2013           /s/ *David A. Orenstein*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

BKY No:      12-42173
Chapter 7

Progress Casting Group, Inc.

Debtor.

_____

**ORDER**

This matter came before the court on the motion of William F. Bieber (the "Movant") seeking relief from the automatic stay of 11 U.S.C. §362.

David A. Orenstein of Barnes & Thornburg LLP appeared for the Movant. Mychal A. Bruggeman of Mackall Crounse & Moore, PLC appeared for the Chapter 7 Trustee.

Based upon all of the relevant files, records and proceedings herein, the court being duly advised in the premises,

IT IS HEREBY ORDERED: that the automatic stay of 11 U.S.C. §362 is terminated to permit the Movant to enforce his security interest in Debtor's right to payment of (a) $102,970 of worker's compensation insurance payments that ATEK Companies Inc. made on behalf of the Debtor and that were refunded to ATEK Companies Inc. by check dated April 8, 2013, in the gross amount of $209,122; (b) $183,032 of worker's compensation insurance payments that ATEK Companies Inc. made on behalf of the Debtor and that was refunded to ATEK Companies Inc. by check dated March 28, 2012, in the gross amount of $294,277; (c) all refunds of worker's

compensation payments made by ATEK Companies, Inc. on behalf of the Debtor that are issued in the future; (d) all sales proceeds that remain due and owing to the Debtor, and that become due and owing to Debtor in the future, for the sale of its assets to Wellman Dynamics Twin Cities, Inc., pursuant to the Asset Purchase Agreement, dated October 29, 2009, as amended.

Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this Order is effective immediately.

Dated: _____                    _____
                                            United States Bankruptcy Judge

MIDS01 685587v1